## Case No. 12,768.

SHERMAN v. The NEVADA.

[See Case No. 5,839.]

## Case No. 12,769.

SHERMAN et al. v. PENNSYLVANIA R. CO.

[8 Wkly. Notes Cas. 269.]

Circuit Court, D. Pennsylvania. Jan. 23, 1880.

RAILROADS — MOB — RIOTS — STRIKE — TRANSIT — COMMON CARRIERS — LIABILITY OF, IN THE EVENT OF LOSS OF PROPERTY BY VIS MAJOR.

1. Plaintiffs shipped goods from Chicago to Philadelphia by rail, and took a bill of lading from the company defendant exempting the defendant, inter alia, from liability for "loss or damage on any article or property whatever by fire or other casualty while in transit or while in depots or places of transshipment." The goods, owing to a general strike of defendant's employés, were stopped en route outside of, but near, the company's depot at Pittsburgh, an intermediate point. During this detention the defendants' property, including these goods, was threatened by a mob, and finding it impossible to maintain their property in security, they called upon the proper county and state authorities for their aid, which having proved ineffectual, the goods were burnt up by the mob. The detention lasted three days, during which the defendants were forcibly dispossessed of their property, including the plaintiffs', by the superior force of the mob. Trains continued to arrive during the time, which were stopped at Pittsburgh by the mob. At the time the mob obtained possession, a train of petroleum cars was standing braked at some distance from the plaintiffs' property, and at or before the fire, these cars were moved to those which contained the plaintiffs' property, and all were burnt up together. In a suit to recover the value of the goods, held, that the defendants were not liable, as the facts disclosed no negligence on their part that had contributed to or caused the loss. The loss of the goods occurred while they were in transit, and was caused by fire within the meaning of the exception in the bill of lading, protecting the defendants.

2. It is the duty of common carriers to convey the goods shipped to the point of delivery without unavoidable delay, and apart from the conditions in the bill of lading, they are liable for loss from any cause, save the act of God or a public enemy. The defendants continued subject to all the liabilities of common carriers, except for losses happening from causes named in the exception, in which there had been no negligence of defendant's servants, while in the discharge of their duty. The defendant, as a common carrier, is liable for any interruption to the transit, caused by the refusal of its servants to perform their duty, which occasioned loss to the plaintiffs.

3. The loss here was not caused by the strike of the defendant's employés, nor was there any permissive allowance by the defendant that the plaintiffs' goods should be stopped in transit. The defendant's default was merely technical, and did not cause, or contribute to the loss. The defendant, under the condition in the bill of lading, was exempt from liability for loss by fire while the goods were in transit, unless occasioned by its default, and its inability to resist the superior force of a mob; and the consequent involuntary relinquishment of possession of the goods and the forced detention of them by the mob was not such default; nor is there any evidence of defendant's default in permitting the arrival of freight trains at Pittsburgh on three consecutive days, during which the mob took and retained possession of the defendant's property, or in their leaving under the circumstances a large number of cars loaded with petroleum in their yard near the plaintiffs' property. The transit of the plaintiffs' goods continued in law, so as to protect the defendant, under the exception in the bill of lading, during the whole period of the continuation of its duty as a carrier to protect the goods. The goods not having reached their destination, were, therefore, legally in transit, until they were destroyed.

Assumpsit, by Sherman, Hall and Co., against the Pennsylvania Railroad Company to recover the value of fifty-three sacks of wool.

A stipulation was filed by counsel waiving a jury trial and referring all facts to the circuit judge under section 649 of the Revised Statutes (page 117), and requesting the court to pass upon, and find specially the facts alleged in the points submitted. The facts, as found by the circuit judge who tried the case, were as follows:

(1) The value of the goods in controversy was, on the 22d day of July, 1877, at the point of shipment, $18,060.38, and at point of destination $20,972.97.

(2) The said goods had, in course of transit from their place of shipment to their respective destinations, reached the city of Pittsburgh at least twenty-four hours before the fire occurred in said city, on July 21 and 22, 1877, and were then in defendant's custody in the cars in which they had been shipped, and the said cars and the said goods were burned in said fire.

(3) The defendant, about July 19, 1877, found itself unable to maintain, against the force of a mob, entire possession and control of its own property, and the property in its custody, including that of the plaintiff, and to operate its road. It then called upon the proper authorities, including the sheriff of Allegheny county, for assistance and protection; a requisition was made by said sheriff upon the governor for the assistance of the military power of the commonwealth,

In pursuance of such requisition, troops were ordered by the governor to aid said sheriff in retaking and redelivering to the defendant entire possession and control of such property, and to enable it to operate its road; and in endeavoring so to do, said troops, on July 21, 1877, came into conflict with said mob and failed to dispossess the same, and immediately after said conflict and failure the property in question was destroyed by fire communicated by said mob.

(4) The goods in question were "received by the defendant on bills of lading of the form of the annexed receipt, being one of what is usually known as the 'Red Star Union Line Fast Freight' receipts, with all and singular the conditions therein contained." This bill of lading is numbered No. 2856, and is thus identified and exhibited as part of the finding in this case. (This was a railroad bill of lading in the usual form, and it contained a stipulation exempting the defendants from liability for "loss or damage on any article whatever by fire or other casualty while in transit, or while in depots or places of transshipment.")

The foregoing facts are found in pursuance of the written admission of the parties filed in the case.

It is further found:

(5) If the transit of the goods in question had not been interrupted at Pittsburgh, and had been continued in regular course, the train containing them would have been at a considerable distance from Pittsburgh eastward before the time of the occurrence of the fire.

(6) When the train containing said goods reached the depot of the defendant in Pittsburgh on July 19th, the hands who had conducted it there left it, and a "strike" of all the regular train hands of the defendant occurred on that day, in consequence of a refusal by the defendant to accede to their demand for an increase of wages.

(7) On the 19th of July there were standing on the tracks in the depot yard at Pittsburgh a number of cars laden with petroleum, about one hundred and fifty yards distant from the cars which contained the plaintiff's goods. They were in the same relative position on the day when the fire occurred. The oil cars were kept in place by ordinary brakes. The grade of the road was descending towards the freight cars, so that the oil cars would run towards the former by their own gravity. At or before the occurrence of the fire the oil cars were caused to move down the grade until they came in contact with the freight cars, and they were all burned up together.

(8) On the 19th, 20th, and 21st of July freight trains continued to be brought into the depot yard of the defendant at Pittsburgh, both from the east and west, in the regular course of transit, and were there stopped, so that there was an unusual accumulation of trains at that point.

John Fallon, for plaintiffs.

Mr. MacVeagh and Chapman Biddle, contra.

McKENNAN, Circuit Judge. This suit was brought to recover from the defendant the value of certain wool, delivered to it at Chicago for transportation to Philadelphia. A jury having been waived, the case was tried by the court upon the evidence submitted by the parties. The following facts are found as established by the evidence (The court here stated the facts set forth in the foregoing part of this report).

The court is requested by plaintiff to find as matter of law:

(1) That defendant's duty as a common carrier was to carry plaintiff's goods from the several points of shipment to . . . Philadelphia, the point of delivery of all, without any unusual or avoidable delay; and apart from the special conditions in the bill of lading, defendant is liable for loss from any cause save the acts of God or a public enemy. Answer. This proposition is affirmed.

(2) That defendant did not cease to be a common carrier by reason of the conditions in the bill of lading, but continued subject to all liabilities of common carriers, except for losses happening for causes enumerated in said conditions, without default or negligence on the part of defendant's servants or employés, while defendant was actually discharging its duty of carrying the goods from the point of shipment, in the usual and proper manner. Answer. This proposition is also affirmed.

(3) That the interruption of the transit by reason of the refusal of the servants of defendant, in charge of its freight trains, on which plaintiffs' goods were being carried, to perform their duty, was a default on part of defendant. Answer. As it was the duty of the defendant, as a common carrier, to transport the goods of the plaintiffs to their point of destination without unreasonable delay, any injurious interruption of such transportation, by the refusal of the defendant's servants to perform their duty, would be a breach of duty imputable to it; and for any loss to the plaintiff, caused by such delay, the defendant would be liable in damages.

(3½) That the strike, and refusal to perform duty on the part of the men, does not justify or excuse the interruption of the transit of plaintiff's goods; and that defendant's election not to pay the ten per cent. additional wages demanded, and in lieu thereof to allow the goods to remain at Pittsburgh, wholly or partly in the control of persons who prevented defendant "operating its road" and performing its contract as a common carrier, makes defendant liable for all the consequences, including the destruction and loss of said goods, during the period that the transit was thus interrupted

and the plaintiff's property thus wrongfully controlled, without proof of any other negligence or misconduct on the part of defendant. Answer. I decline to affirm this proposition. The evidence does not show that the loss complained of was caused by the "strike," nor that any permissive allowance of the retention of the goods at Pittsburgh can be imputed to the defendant. On the contrary, it is admitted by the plaintiff that the defendant was coerced by the superior power of a lawless mob, which usurped control of the train containing the plaintiffs' goods, and prevented the defendant from operating its road; that the defendant took prompt steps to meet the emergency by an appeal to the civil authorities for protection and assistance; that these authorities, with the military force summoned by them, were repelled; and that the train with these goods was thereupon destroyed by an incendiary fire. While these circumstances would not protect the defendant against a failure to fulfil its obligation as a common carrier, yet I cannot say that an involuntary technical default warrants an imputation of negligence to the defendant touching a cause of loss, which is expressly excepted from its liability.

(4) That allowing or suffering others than their own employés to take from defendant the possession or control, whether in whole or in part, of plaintiffs' goods, and to use that control not for the purpose of furthering or continuing the transit, but for the purpose of suspending and preventing it, was a default on the part of defendant. Answer. The defendant was deprived of the control of the train containing the plaintiffs' goods, and was prevented from continuing their transit by a force it was unable to resist. It cannot be held responsible for the purpose of the mob, although the act of the mob in intercepting the transportation of the goods might subject the defendant to compensation to the plaintiff for any loss sustained by him by reason of such interrupted transit of his goods. I decline, therefore, to affirm this proposition.

(5) That, however proper it may have been for defendant to call on the public authorities for protection and assistance, "in retaking and redelivering to defendant the entire possession and control of said property," such act of propriety in no way justifies the previous default in suffering the possession and control thereof to pass out of their hands. Answer. This proposition is affirmed, with the qualification that I do not say that the defendant was in default, otherwise than as, and for the reason, stated in the answer to proposition 3½.

(6) That the various risks enumerated in said conditions, which are assumed by plaintiff in relief of defendant's general liability, and more especially the risk "of fire while in transit," are limited to losses occurring while the defendant is engaged in carrying the goods, in the proper discharge of its duties under its contract, and do not include loss by fire, occurring while the transit is suspended, and the goods in question have been suffered by defendant to pass into the possession and control of persons acting adversely to the duties defendant assumed to discharge. Answer. I decline to affirm this proposition. The exception in the bill of lading is, that the carrier shall not be liable "for loss or damage on any article or property whatever, by fire or other casualty, while in transit, or while in depots or places of transshipment." The engagement of the carrier is to assume the custody of the property entrusted to him at the point of shipment, and to deliver it at the place of destination, and the obvious intent, as well, I think, as the clear import, of the exception is to protect him against the consequences of fire during the continuance of his duty as a carrier. His qualified liability is coextensive with his duty, and he forfeits its protection only by some fault of his own, in connection with the casualty to which the exception refers. Nor can I regard it as within the reason of the exception to hold, that it is eliminated from the contract when the property in the carrier's charge is wrested from him by a hostile force, which he is unable to resist, and it is consumed in an incendiary fire, although his exclusion from the possession and control of it may last for two days before it is thus destroyed.

(7) That it was gross default and negligence on the part of defendant to allow freight trains to come into Pittsburgh on the 19th, 20th, and 21st of July, under the circumstances in the 7th clause of the facts, which the court is requested by plaintiff to find, mentioned. Answer. I decline to affirm this proposition.

(8) That it was gross default and negligence to allow cars loaded with petroleum to continue to stand on the track, under all the circumstances and manner, and for the period of time in the 8th clause of said facts mentioned. Answer. I decline to affirm this proposition, for the reasons that the petroleum cars were presumably in the usual and proper place for them in the depot yard; that they were at a safe distance from the cars containing the plaintiffs' goods, and were there secured by mechanical appliances usually employed for that purpose, that they might lawfully be kept there, and that their removal into contact with the other cars was the act of the incendiary mob which had, for two days before, maintained a forcible mastery of the situation.

(9) That defendant is responsible for the misconduct and default of the persons whom it suffered to take control and possession, wholly or jointly with itself, of plaintiff's property, and to continue in such control for the space of two or three days, during the period of time while that control and possession continued, and for all loss

resulting from such misconduct. Answer. I decline to affirm this proposition.

(10) On the facts and law aforesaid, plaintiff prays the court to enter judgment for $20,973.97, and interest from July 22d, 1877, to the day judgment is rendered.

Upon the whole case I am of the opinion, and so find, that the loss complained of was caused by fire while the plaintiffs' goods were in transit by the defendant within the meaning of the exception in the bill of lading; that the defendant is not shown to have been guilty of any negligence by which the efficiency of the exception is in any wise impaired; and hence that the plaintiff is not entitled to recover. Judgment will, therefore, be entered in favor of defendant.