# AMERICAN RAILWAY EXPRESS COMPANY

## *vs.*

## PENINSULA PRODUCE EXCHANGE.

*Carrier—Shipment of Fruit—Delay in Delivery—Evidence— Instructions—Effect of Strike.*

In an action against a carrier for delay in the delivery of a shipment of fruit, a witness who testified that he was familiar with the schedule of the trains and the ordinary and usual time required for the transportation of shipments over the route in question, and whose duties as plaintiff's sales manager were such as required him to have such knowledge, could testify as to the ordinary running time for such shipments between the point of shipment and that of delivery. p. 426

In an action against a carrier for delay in the delivery of a carload of fruit at the point of destination, the erroneous admission of evidence as to the usual running time of trains between that point and the point of shipment was not cause for reversal of a judgment for plaintiff, in view of defendant's evidence that though the car arrived at the point of destination at 10.45 o'clock Sunday morning, it was not placed on the delivery track for unloading until 3 o'clock Monday morning.

p. 427

Evidence that another car was consigned by plaintiff at the same time to another consignee at the same point, that this car was placed on the delivery track at the same time as the car involved in this suit, and was removed by the consignee shortly thereafter, was too remote to be admissible, it not clearly appearing what such other car contained, and there being no evidence when the contents were sold, and with what result. p. 428

Evidence as to another car consigned to the same consignee, which was placed on the delivery track at the same time as the car involved in this suit, *held* too remote, there being no evidence to show when the contents of such car were sold, and with what result. p. 428

In an action for delay in delivery of a carload of fruit at the New York terminal, a suggestion by defendant carrier that the absence of evidence as to the decline in price of such fruit between the proper time of delivery and the time at which it was delivered was ground for granting defendant's prayer constituting a demurrer to the evidence, *held* inconsistent with its granted prayer that the verdict should be for defendant if the car was placed by it on the delivery track in time for the market "on the first day there was a market for said berries at New York" following the day they were shipped.  pp. 428, 429

Defendant express company was not excused as regards delay by its agent, a railroad company, in placing plaintiff's carload of fruit on the delivery track of its terminal, by reason of the existence of a strike among its switchmen, the strike, which was unattended by violence or forcible obstruction of defendant's business, having been in existence over two months, as was known to defendant at the time of accepting plaintiff's shipment, and an obstruction to the placing of the car on the delivery track, caused by a wreck resulting from the inexperience of persons employed in place of the striking switchmen, having been removed a considerable time before the car was placed on such track.  pp. 429-431

*Decided January 12th, 1923.*

Appeal from the Circuit Court for Wicomico County (PATTISON, C. J., and BAILEY, J.).

Action by the Peninsula Produce Exchange against the American Railway Express Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, ADKINS, and OFFUTT, JJ.

*Frederick W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the appellant.

*James E. Ellegood,* with whom were *James M. Crockett* and *Ellegood, Freeny & Wailes* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought in the Circuit Court for Wicomico County by the Peninsula Produce Exchange, incorporated, against the American Railway Express Company, a corporation, to recover a loss alleged to have been sustained by the plaintiff by reason of the failure of the defendant to transport and deliver with reasonable dispatch a carload of strawberries shipped from Queponco, in Worcester County, Maryland, and consigned to Frost & McNab, Jersey City, New Jersey.

The plaintiff offered evidence tending to show that the berries were delivered to the defendant at Queponco on Saturday, June 12th, 1920, and that the car containing the berries, initialed and numbered P. L. 608380, was attached to a passenger train which left Queponco at 2.21 P. M., and which, according to the schedule and the usual running time of such trains, was due to arrive at Hudson Terminal, Jersey City, at 11.21 o'clock the same day; that in accordance with its custom the plaintiff notified the consignee, Frost & McNab, by wire of the shipment and the number of the car; that when carload shipments arrive at Jersey City they are switched from the track on which they arrive to the delivery track, where they are delivered to and unloaded by the consignee or his agents; that it usually takes the defendant from an hour to an hour and a half to have a car switched or moved to the delivery track; that the agent or truckman of the consignees, after receiving the telegram from the plaintiff, went over to the Hudson Terminal Sunday night for the berries but found that the car had not been placed on the delivery track; that about 3 o'clock Monday morning the defendant or one of its agents telephoned to the store of Frost & McNab that the car was ready for them, but that when the consignees' truckman arrived at the terminal a few minutes later the car had not been placed on the delivery track where he could unload it; that if he, the truckman, had waited there for it to be placed on the delivery track it would have been too late for Monday morning's market, and as the car was a refrigerator car and the berries would keep better in the car than

they would have kept if taken out of the car, he left the car until Monday night, when he unloaded it in time for the Tuesday morning market; that the market is from 12 o'clock at night to 5 o'clock in the morning, and the best market is between 1 and 4 o'clock in the morning; that if the car had been delivered in time for the Monday morning market the berries could have been sold at from twenty to thirty cents per quart, and that, by reason of a fall in the market value of the berries, they were sold on the morning of the 15th of June at from fifteen to twenty-two cents per quart.

The defendant offered evidence tending to show that the car in question left Queponco at 1.45 o'clock in the afternoon of June 12th and was attached to a special express train which arrived at Jersey City at 10.45 o'clock Sunday morning; that it arrived on track five in the passenger station and was ordered by the yard foreman of the defendant at 12 o'clock to be placed on track eight in the local yard so that it could be moved from there and placed on the delivery track. One of the yard foremen testified that the car was on track eight when he left the yard at 5 o'clock that evening; that about 5 o'clock that evening some inexperienced men in the employ of the Pennsylvania Railroad Company, while pushing two carloads of coal on the coal wharf, pushed one of the coal cars off the wharf and blocked track eight for several hours; that it took about five hours to clear up the wreck, and that when he returned to the yard again about 11 o'clock that night the wreck was not fully cleared up; that there are special tracks for delivery "of car lots" of strawberries to truckmen; that there was one track for such purpose during the day and more than one at night. Another yard foreman of the defendant, who was on duty from 6 P. M. to 4 o'clock in the morning, testified that the car in question was on track eight at 6 o'clock Sunday evening; that the wreck of the coal car was cleared up about 1.30 o'clock standard time, or 2.30 o'clock day-light saving time Sunday night; that the car, with eleven other cars, was placed on the delivery track about 3 o'clock Monday morning; that there was a strike of the

Pennsylvania Railroad switchmen at that time, which had been in existence since the 9th of April; that the railroad company was employing inexperienced men and working two crews instead of three, and that they couldn't move the cars as fast as they could have moved them with experienced men. Another employee of the defendant testified that there were two carloads of berries consigned to Frost & McNab placed on the delivery track about 3 o'clock Monday morning; that the other car was car N. P. 96129, and that the truckman of Frost & McNab unloaded car N. P. 96129 at about 4 o'clock that morning and left the car in question in this case until Monday night. In rebuttal Frost & McNab's truckman testified that it would be impossible to unload eleven cars on the delivery track at one time, as it would not be possible for eleven trucks "to back in there all at once."

At the conclusion of the evidence the plaintiff offered seven prayers, the first, second, fourth and seventh of which were granted, and the defendant offered nine, the first of which was granted, the fourth was granted as modified, and the others rejected. The defendant excepted to the granting of the plaintiff's prayers and to the rejection and modification of its prayers, as it did to a number of rulings on the evidence, and has brought this appeal from a judgment in favor of the plaintiff.

The first, second, third, fourth, fifth and sixth exceptions were to the testimony of a witness as to the schedule time for the arrival of the train to which the car of berries was attached in Jersey City, and the usual and ordinary time consumed in transporting a carload of berries by express from Queponco to Jersey City. The witness had stated that he had been the agent of the plaintiff for a number of years as sales manager; that in the performance of his duties he gave another agent of the plaintiff the billing instructions for the cars shipped, and that when the billings were made out he wired the consignee, giving the car number and contents, and the consignee wired him of the arrival of the car; that he had frequently been in Jersey City when the shipments from the

plaintiff arrived; that the plaintiff ships on an average about two hundred carloads of berries and other perishable fruits a year to Jersey City, and that he was familiar with the usual and ordinary running time for "car lot shipments" by express between Queponco and Jersey City, and that the ordinary and usual running time for such shipments was ten hours. We see no objection to this evidence. The witness not only testified that he was familiar with the schedule of the trains and the ordinary and usual time required for the transportation of shipments from Quenponco to Jersey City, but, it would seem, that his duties were such as required him to have such knowledge. But even if there was error in the admission of this evidence, it would not justify a reversal of the judgment, for the evidence produced by the defendant is to the effect that the car arrived in Jersey City at 10.45 o'clock Sunday morning, and that it was not placed on the delivery track until 3 o'clock Monday morning, and, as was said in *North Pennsylvania R. Co. v. Commercial B'k.,* 123 U. S. 733, "The duty of a common carrier is not merely to carry safely the goods entrusted to him, but also to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination. * * * The undertaking of the carrier to transport goods necessarily includes the duty of delivering them. * * * No obligation of the carrier * * * is more strictly enforced." See also *New York, P. & N. R. Co. v. Peninsula Prod. Exchange,* 122 Md. 215.

The seventh exception was to the action of the court in permitting the consignees' truckman to state that it took him about three-quarters of an hour to take a load of berries from the terminal in Jersey City to Frost & McNab's place of business in New York. While the car in question was consigned to Frost & McNab at Jersey City, there is ample evidence in the case to show that the defendant knew that the berries were intended for the market of Monday morning, June 14th, and that it also knew the hours of said market, and that the berries, after delivery in Jersey City, had to be conveyed by the consignees to their place of business in New

York City in time for said market, but in view of other evidence in the case, it is not necessary to determine in this case whether defendant, in making delivery of the car, was bound by such knowledge. The other evidence in the case renders this evidence unimportant, and it could not have prejudiced the defendant.

What we have said in regard to the first six exceptions disposes of the eighth exception, which was to the testimony of the witness that the car was "due to be delivered at Jersey City at 12 o'clock midnight."

The ninth exception was to the refusal of the court to permit the defendant to show that there was another car, "No. PRR. 103784," which was consigned by the plaintiff to H. Warner & Son, New York; that it was placed at the same time on the delivery track on which the car in question was placed, and was taken by H. Warner & Son at 4.30 o'clock Monday morning, and that no claim was filed with the company on account of that car, and the tenth exception was to the striking out of the evidence relating to another car, N. P. 96129, which was consigned to Frost & McNab, and which, according to the defendant's evidence, was among the cars placed on the delivery track about 3 o'clock Monday morning. This evidence was entirely too remote. The evidence is not clear as to what the first mentioned car contained, and there was no evidence to show when the contents of either car was sold, and with what result.

The only objection urged against the plaintiff's first prayer is that the car was consigned to Frost & McNab at Jersey City, and that there was no evidence of a decline in the market price of berries at Jersey City. The obvious answer to this objection, even if it could have been well taken, is that there was no exception to the prayer on that ground. It is also suggested that the absence of such evidence was sufficient ground for the granting of defendant's second prayer, which was a demurrer to the evidence. All of the evidence shows, however, that the berries were intended for the New York market and that the defendant was aware of that fact, and the

suggestion is entirely inconsistent with the defendant's fourth prayer, which was granted and which instructed the jury that their verdict should be for the defendant if they found that the car was placed by it on the delivery track in time for the market "on the first day there was a market for said berries at New York City" following the day they were shipped from Queponco.

By the plaintiff's fourth prayer the court instructed the jury that there was no evidence of such a strike of the switchmen of the Pennsylvania Railroad Company at the yards in Jersey City on or before June 12th as excused the defendant from liability, if the jury found the facts set out in the plaintiff's first prayer, and the court rejected the defendant's fifth and eighth prayers relieving the defendant of the consequences of its failure to deliver the car with due dispatch if the jury found that the delay was due to the inexperience of the switchmen of the Pennsylvania Railroad Company as a result of the "switchmen's strike." In support of its exception to this action of the court below, the appellant cites *Geismer* v. *Lake Shore & M. S. R. Co.,* 102 N. Y. 563, and 4 *R. C. L.* p. 741. In *Geismer's* case, the Court of Appeals of New York, referring to the facts of the case, said: "Here, upon the facts which we must assume to be true, there was no default on the part of the defendant. It had employees who were ready and willing to manage its train, and carry forward the stock, and thus perform its contract and discharge its duty; but they were prevented by mob violence, which the defendant could not by reasonable efforts overcome." And after citing a number of cases, the court said further: "If, in this case, the employees of the defendant had simply refused to discharge their duty or to work, or had suddenly abandoned its service, offering no violence, and causing no forceable obstruction to its business, those authorities could have been cited for the maintenance of an action upon the principles stated in those cases." In 4 *R. C. L., supra,* after stating that a carrier is not liable for delays "caused by striking employees if accompanied by intimidation and vio-

lence," it is further said: "But while for a delay resulting solely from the lawless violence of former employees who have struck and quit their employment a carrier is not responsible, it seems that when the employees of a company suddenly abandon its service, and, while offering no violence, and causing no forcible obstruction to its business, simply refuse to work or to further discharge their duties, for any delay consequent thereon as, for instance, where there is a failure to supply promptly their places, the carrier is liable." In this case the express receipt signed by the plaintiff and delivered to the defendant, contained the provision: "Unless caused in whole or in part by its own negligence, or that of its agents, the company shall not be liable for loss, damage or delays caused by * * * the act of God, public enemies, authority of law, quarantines, riots, strikes, peril of navigation," &c.; and the appellant states in its brief that "The alleged delay was the result of the wreck, and the wreck was the result of the strike." But we agree with the learned court below that the evidence fails to establish such a strike as relieves the defendant of responsibility for any loss occasioned by its failure to forward and deliver the car to the consignees with reasonable dispatch. The railroad company must be regarded as the agent of the defendant (*Bank of Kentucky* v. *Adams Ex. Co.,* 93 U. S. 174), and the evidence shows that the strike had been in existence since April 9th, 1920, without a suggestion of any violence on the part of the strikers, or that they did anything to forcibly obstruct the business of the defendant, and there is no evidence to show what effort the railroad company made to supply their places with competent men. The defendant accepted the car of berries and undertook to forward and deliver it to the consignees with reasonable dispatch with full knowledge of the existence of the strike. Moreover, it is admitted by the defendant that the car arrived in Jersey City at 10.45 o'clock Sunday morning and was not placed on the delivery track until 3 o'clock Monday morning; that it was ordered by the agent of the defendant at 12 o'clock Sunday to be placed on track eight and that it re-

mained on track eight until 5 o'clock Sunday afternoon; that
the accident with the coal car occurred about 5 o'clock Sunday
afternoon, and that the obstruction of the tracks caused by
said accident was entirely removed by 1.30 o'clock Monday
morning, and that notwithstanding the defendant's foreman
stated that the cars on track eight, including the car in ques-
tion, could have been moved to the delivery track in ten
minutes, they were not placed on that track until 3 o'clock in
the morning. Under such circumstances the court below
properly refused to instruct the jury that if they found that
the delay in the delivery of the car was due to the strike men-
tioned in the evidence, the plaintiff was not entitled to re-
cover.

The defendant's sixth and ninth prayers, which refer to
car N. P. 96129, are disposed of by what we said in regard to
the ruling of the court striking out the evidence in reference
to that car, and the defendant's third prayer, which was a
demurrer to the evidence, is covered by what we have said in
reference to its second prayer.

Finding no reversible error in the rulings of the court be-
low, the judgment will be affirmed.

*Judgment affirmed, with costs.*