(February 24, 1926.)

# BEN T. RITCHIE, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[244 Pac. 580.]

CARRIERS—STRIKES—CLAIM FOR NEGLIGENT LOSS—EVIDENCE OF OTHER SHIPMENTS—EVIDENCE OF REASONABLE TIME FOR SHIPMENT—EXPENSES INCURRED BY REASON OF DELAY—DUTY TO FURNISH STOCKYARDS — INSURER FOR SAFE DELIVERY — INSURER FOR DELIVERY WITHIN REASONABLE TIME—DETERMINATION OF REASONABLE TIME—DUE DILIGENCE — PASSIVE AND VIOLENT STRIKES — QUESTION FOR JURY.

1. In an action against a common carrier, under a bill of lading issued in accordance with chap. 176, 38 U. S. Stats. at L. 1196, 1197, Comp. Stats., sec. 8604a, Fed. Stats. Ann., 2d ed., p. 506, if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damage in transit, by carelessness or negligence, no notice of claim or filing of a claim is required as a condition precedent to recovery.

2. Evidence of the customary time of shipments, from the point at which the shipment was made to its destination, is competent proof as to the reasonable time·required for a shipment over such route; a witness may not ordinarily, however, state what would be a reasonable time for transporting freight between said points.

3. If a shipment of livestock be delayed on account of the carrier's negligence, the carrier is liable for the additional expenses incurred by the shipper for feed for the livestock so delayed.

4. It is the duty of a carrier transporting livestock to furnish reasonable and proper facilities for feeding, watering and resting them.

5. A carrier is an insurer for the safe delivery of livestock, and is liable for every loss which cannot be attributed to the act of God, the public enemy, the act of the owner or the vicious propensities or inherent character of the animals themselves.

6. In the absence of a special contract, a carrier is an insurer for delivery only within a reasonable time.

7. What is a reasonable time for the delivery of goods must be determined by the circumstances of each particular case.

8. While, save for well-recognized exceptions, a carrier is an insurer of safety and the final delivery of goods committed to its

42 Idaho—13

charge for transportation, in respect to the time of delivery it stands on the same ground with other bailees, and is responsible only for the exercise of due diligence. Consequently, if by accident or misfortune, not amounting to an inevitable casualty or the act of God, the transportation of goods is retarded, the carrier will not be responsible for such delay, if it has used due care and reasonable diligence, and the goods are finally safely delivered.

9. Where employees suddenly abandon a carrier's service, and, while offering no violence and causing no forcible obstruction to its business, simply refuse to work or further discharge their duties, for any delay in a shipment of livestock consequent thereon the carrier is liable, if it fails to use reasonable diligence in counteracting the effect of the strike; and whether the carrier has exercised such reasonable diligence is a question of fact.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. Ralph W. Adair, Judge.

Action for damages resulting from delayed shipment of sheep. Judgment for plaintiff. *Reversed and remanded.*

Geo. H. Smith, H. B. Thompson, John H. McEvers and John O. Moran, for Appellant.

The law infers that the carrier agrees to deliver within a reasonable time, and by "reasonable time" is meant the time reasonably required under all the circumstances attendant upon the movement of the particular shipment. (*The Richland Queen*, 254 Fed. 668, 166 C. C. A. 166; *City of East Liverpool v. Pitt Construction Co.*, 285 Fed. 236;

Publisher's Note.

3. See 4 R. C. L. 999.
4. See 4 R. C. L. 972.
5. See 4 R. C. L. 950.

See Carriers, 10 C. J., sec. 105, p. 94, n. 29; sec. 129, p. 108, n. 82; p. 109, n. 89; sec. 132, p. 111, n. 14; sec. 133, p. 113, n. 34; sec. 148, p. 121, n. 24; sec. 404, p. 283, n. 95; p. 284, n. 97, 98, 99, 3; p. 285, n. 4, 5; sec. 407, p. 286, n. 16, 17; sec. 410, p. 290, n. 64, 65; sec. 415, p. 293, n. 99; p. 294, n. 98, 6; sec. 435, p. 303, n. 26, 32; sec. 440, p. 305, n. 61, 62; sec. 451, p. 313, n. 54; sec. 485, p. 333, n. 78; sec. 486, p. 335, n. 94 New.

*Pittsburgh, Cincinnati & St. L. R. Co. v. Hollowell,* 65 Ind. 188, 32 Am. Rep. 63, 66; *Marshall v. McNear* (D. C.), 121 Fed. 428; *In re 2098 Tons of Coal,* 135 Fed. 317, 320; *Young v. Maine Central R. Co.,* 113 Me. 113, 93 Atl. 449; *Johnson v. New York, New Haven & H. R. Co.,* 111 Me. 263, 88 Atl. 988; *Fiske Warren v. Portland Terminal Co.,* 121 Me. 157, 26 A. L. R. 304, 116 Atl. 411; *Empire Trans. Co. v. Philadelphia & R. Coal & Iron Co.,* 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623; *Gray v. Oregon Short Line R. Co.,* 32 Ida. 701, 187 Pac. 540.)

It is prejudicial error to permit plaintiff's witness over objection to testify as to what in his opinion would constitute a reasonable time to transport a shipment of sheep from Adrian, Oregon, to Idaho Falls; and where it is not shown that the witness in forming his opinion took into consideration all of the circumstances attendant upon the trip. (*St. Louis, I. M. & S. Ry. Co. v. Hurst & Riley* (Tex. Civ. App.), 135 S. W. 599.)

It is prejudicial error to permit plaintiff's witnesses over objection to testify as to the time consumed in making a particular trip from Idaho Falls, Idaho, to Adrian, Oregon. (*Atchison, T. & S. F. Ry. Co. v. Merchants Livestock Co.,* 273 Fed. 130, 134.)

A sudden and unexpected strike of the employees of the carrier, brought on without fault on the part of the carrier, and without warning, will excuse delay as a matter of law, where carrier has exercised reasonable diligence to secure new employees and to forward shipment. (*Haas v. Kansas City, Fort S. & Gr. Co.,* 81 Ga. 792, 7 S. E. 629; *The Richland Queen,* 254 Fed. 668, 166 C. C. A. 166; *Marshall v. McNear, supra; Fiske Warren v. Portland Terminal Co.,* 121 Me. 157, 21 A. L. R. 1483, 26 A. L. R. 304, 116 Atl. 411; 4 R. C. L., pp. 743, 744, sec. 212.)

Even if it be conceded that a sudden strike, brought on without fault of the carrier, and where due diligence is used in endeavoring to overcome its effects, will not as a matter of law excuse delay, nevertheless evidence thereof is material and the jury should have been permitted to take the same into consideration in reaching a conclusion as to whether

or not the delay was reasonable. (*International & Great N. R. Co. v. Tisdale*, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545.)

Where the shipper has entered into a stipulation in the contract of shipment, providing that unless notice of injury is filed within ninety days and a claim in writing filed within four months, and he has failed to serve such notice, or to file such claim, he may only recover for damages caused by the negligence of the carrier. (*Hailey v. Oregon Short Line R. Co.* (D. C.), 253 Fed. 569; *Barrett v. Van Pelt*, 268 U. S. 85, 45 Sup. Ct. 437, 69 L. ed. 857.)

Where the shipper agrees to feed the stock in transit, manifestly the carrier would be obliged to pay for the feed only in case of negligent delay. (34 Stat. L. 608; 1 Fed. Stats. Ann. 386.)

Proof of delay is not proof of negligence. The plaintiff must prove that the delay was negligently caused, and this is especially true where he or his agents attended the shipment. The burden never shifts to the defendant to excuse the delay. (*Hickey v. Chicago, B. & Q. R. Co.*, 174 Mo. App. 408, 160 S. W. 24; *Ecton v. Chicago, B. & Q. R. Co.*, 125 Mo. App. 223, 102 S. W. 575.)

Where by contract the shipper agrees to load, unload, feed and care for sheep and to care for them during transportation, and the shipper is given the rate pursuant to regular tariff schedule, neither the carrier nor his agent may alter the contract and give shipper a preference rate, or extend a rebate or release shipper from his duty, and the admission of evidence of promise made by agent of the company to release the shipper from his responsibility and from the conditions of the contract is error. (*Southern R. Co. v. Prescott*, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. ed. 836; *New York Central & H. R. Co. v. York & Whitney*, 256 U. S. 406, 41 Sup. Ct. 509, 65 L. ed. 1016; *Chicago, B. & Q. R. Co. v. Merriam & Millard Co.*, 297 Fed. 1.)

It is the duty of the carrier transporting livestock to furnish reasonable and proper facilities for loading, unloading, feeding, watering and resting them at places along its line

where the carrier can reasonably anticipate that the same
will be needed, but he need not prepare for abnormal de-
mands. It was error to instruct the jury that it was the
carrier's duty to be prepared to meet all emergencies at all
points on its line, and that this duty was absolute. (*Lane
v. Oregon Short Line R. Co.*, 34 Ida. 37, 198 Pac. 671; *Casey
v. St. Louis S. W. R. Co.*, 37 Tex. Cr. 49, 83 S. W. 20; *Regan
v. Adams Express Co.*, 49 La. 1579, 22 So. 837; 4 Elliott
on Railroads, p. 848, sec. 2345, and p. 854, sec. 2347.)

The court erred in failing to instruct the jury that under
all of the evidence as introduced, the plaintiff's claim for
injury to the sheep, alleged to have been caused while the
same was retained in the stockyards at Pocatello, was barred
by the stipulation in the contract limiting the time for filing
of the notice of the injury and the time within which to
file a claim in writing. (4 Fed. Stats. Ann., 2d ed., p. 507;
*Lissberger.v. Bush Terminal R. Co.*, 119 Misc. Rep. 691, 197
N. Y. Supp. 283.)

O. A. Johannesen, for Respondent.

The loss and damages suffered by the respondent having
been the result of appellant's negligence, or the negligence
of its servants, it was not necessary for the respondent to
file any claim for damages prior to filing suit, provided the
suit was filed within the statutory period. (4 R. C. L. 991;
*Hailey v. Oregon Short Line R. Co.*, 253 Fed. 569, 572.)

The appellant having accepted respondent's sheep for ship-
ment was under a legal duty to forward them with reasonable
dispatch and diligence, and to complete the carriage within
a reasonable time. If it failed in this duty, by reason of its
own acts or acts of its employees, it was liable for damages
proximately resulting from such failure. (*Gray v. Oregon
Short Line R. Co.*, 32 Ida. 701, 187 Pac. 540; *Groot v. Ore-
gon Short Line R. Co.*, 34 Utah, 152, 96 Pac. 1019; *Ormsby
v. Union Pacific R. Co.*, 4 Fed. 170; *Chicago etc. R. Co. v.
Morris*, 16 Wyo. 308, 93 Pac. 664; *Tiller & Smith v. Chicago,
B. & Q. R. Co.*, 142 Iowa, 309, 120 N. W. 672; 4 Elliott on
Railroads, p. 858; 4 R. C. L. 737, 956.)

The question of whether the appellant consumed an unreasonable length of time in transporting sheep from Adrian, Oregon, to Idaho Falls, Idaho, was a question of fact for the jury. (*Gray v. Oregon Short Line R. Co.*, 32 Ida. 701, 703, 187 Pac. 540; *Texas & P. R. Co. v. Langbehn* (Tex. Civ. App.), 150 S. W. 1188; 5 Elliott on Railroads, p. 706; *Helliwell v. Grand Trunk Ry. Co.*, 7 Fed. 68, 10 Biss. 170; *St. Louis, I. M. & S. R. Co. v. Keys*, 6 Ind. Ter. 396, 98 S. W. 138; *Lay v. Chicago, B. & Q. R. Co*, 157 Mo. App. 467, 138 S. W. 884.)

The appellant was not excused from transporting respondent's sheep from the point of loading to point of destination, within a reasonable time, by the fact that a number of its employees, engaged in yard switching at Pocatello, went on strike some hours after the shipment arrived in the Pocatello yards, and before appellant had started the shipment northward to Idaho Falls. (*Pittsburg, Ft. Wayne & C. R. Co. v. Hazen*, 84 Ill. 36, 25 Am. Rep. 422; *Jonesboro etc. R. Co. v. Maddy*, 157 Ark. 484, 28 A. L. R. 498, 248 S. W. 911; *Southern R. Co. v. Barbee & Co.*, 190 Ky. 63, 226 S. W. 376; *Lang v. Pennsylvania R. Co.*, 154 Pa. 342, 35 Am. St. 846, 26 Atl. 370, 20 L. R. A. 360; *Sherman v. Pennsylvania R. Co.*, 21 Fed. Cas. No. 12,769; *St. Louis & S. F. R. Co. v. Bilby*, 35 Okl. 589, 130 Pac. 1089, 1097.)

The appellant, having accepted respondent's sheep for shipment, was under a legal duty to safely transport and deliver them at Idaho Falls, and became liable to respondent for all loss or damage sustained by him for failure so to do, unless excused by an act of God, public enemy, act of the owner or the inherent character of the sheep themselves. (*Stiles v. Louisville & N. R. Co.*, 129 Ky. 175, 130 Am. St. 429, 110 S. W. 820; *Beard v. Illinois Cent. R. Co.*, 79 Iowa, 518, 18 Am. St. 381, 44 N. W. 800, 7 L. R. A. 280.)

A delay having occurred to the shipment while the same were in Pocatello yards of appellant, the latter still continued to be under the same duty of properly and safely caring for respondent's sheep. (4 Elliott on Railroads, p. 672; *Gulf etc. R. Co. v. Frost* (Tex. Civ. App.), 34 S. W.

167; *Chicago, R. I. & G. Ry. v. Linger* (Tex. Civ. App.), 156 S. W. 298.)

It was the duty of appellant to maintain clean, sanitary and ample stockyards at Pocatello for respondent's sheep while they were detained there by reason of the strike of appellant's switchmen, and to provide sufficient feed for the stock during their stay. (*Lane v. Oregon Short Line R. Co.*, 34 Ida. 37, 198 Pac. 671; *Atchison, T. & S. F. Ry. v. Allen*, 75 Kan. 190, 88 Pac. 966, 10 L. R. A., N. S., 576; *Norfolk & Western R. Co. v. Harman & Crockett*, 91 Va. 601, 50 Am. St. 855, 22 S. E. 490, 44 L. R. A. 289; 4 Elliott on Railroads, p. 848; *Missouri Pac. Ry. Co. v. Ivy*, 79 Tex. 444, 15 S. W. 692.)

GIVENS, J.—Ben T. Ritchie, respondent, sued to recover $2,949.25 as damages alleged to be the result of the delay and negligence of the appellant Oregon Short Line Railroad Company in handling a shipment of eight carloads of sheep from Adrian, Oregon, to Idaho Falls, Idaho. The sheep, after having been on board the cars for 24 hours arrived at Pocatello, Idaho, where they were unloaded and put in the stockyards by appellant for seven days, during which time they were fed hay, etc., totaling $879.25, which amount was paid by respondent, during which time 137 head of sheep died and some 350 head of lambs were prematurely born dead. All respondent's material allegations were admitted except that the damages arose from appellant's negligence, the death of more than 31 sheep, the value of the sheep and lambs, and that the sheep were unloaded without respondent's knowledge or consent. Appellant further urged that no notice of claim or claim had been filed within 90 days from the unloading of the sheep as provided in the shipping contract between the parties, and that the delay at Pocatello and whatever damages were caused thereby, was not through the fault or negligence of appellant but resulted from a sudden and unforeseen strike of some 100 switchmen in the employ of appellant at about the time of the arrival of the sheep in Pocatello.

At the close of the trial appellant moved for a directed verdict in its favor upon six grounds, the first four being on the insufficiency of the evidence to establish negligence on the part of appellant, or any proper legal measure of damages for the premature births, or the market value of the ewes that died in the stockyards; the fifth, that no claim had been presented, and sixth, that it affirmatively appeared that the deaths were directly caused by the negligence of respondent in overloading. The motion was denied and the jury returned a verdict for $1,962.27 in favor of respondent; from the judgment on the verdict this appeal is taken.

Numerous errors are assigned which may be grouped under the following heads: First, error in refusing to instruct (appellant's requested instruction No. 14) that since no notice of damage or claim therefor was filed, respondent could not recover; second, refusal of the court to give a nonsuit or directed verdict (appellant's requested instruction No. 1); third, the giving of instructions Nos. 14, 15 and 26, which involve the question of to what extent and under what circumstances a strike absolves a carrier from damages for a delayed shipment of livestock; fourth, the giving of instructions Nos. 18 and 19, which laid down the law with regard to what would constitute a reasonable or unreasonable delay; fifth, the giving of instructions Nos. 17 and 23, which are germane to both the above questions; sixth, instruction No. 20, which was the reverse of appellant's requested instruction No. 14, advising the jury that no notice of claim was necessary if the loss was by reason of the carelessness or negligence of the appellant; seventh, the giving of instruction No. 21, defining the degree of care required of appellant in caring for the sheep, and instructions Nos. 22 and 25, which bore upon the question of the condition of the stockyards and the measure of damages, including the liability for feed given the sheep while they were being held at Pocatello. Because of the ultimate conclusion reached, we will not discuss the action of the court in refusing a directed verdict from the standpoint of the sufficiency of the evidence.

Requested instruction No. 14 was as follows:

"You are instructed that, since it appears without conflict from the evidence that plaintiff failed to file or present within the time or in the manner required by the livestock contract, a claim or notice of claim covering loss or damages resulting from death of any sheep or lambs in the stockyards at Pocatello, he is barred and prevented from recovery of damages on account of death of any sheep or lambs and you may not consider or base a verdict on either of those grounds."

This instruction did not follow the terms of the contract contained in the bill of lading and was therefore properly refused, paragraph No. 5 of the bill of lading being as follows:.

"5. Unless notice of claim for shrinkage, detention, delay, loss or death of, or damage or injury to said livestock is presented in writing to the station agent of the carrier at the point of delivery, or at point of origin, within ninety (90) days from the unloading of said stock at destination, or in case of failure to make delivery, then within ninety (90) days after a reasonable time for delivery has elapsed, and such notice be supplemented by shipper within four (4) months from said date of unloading at destination, or in case of failure to make delivery, then within (4) months after a reasonable time for delivery has elapsed, by filing with such agent definite claim in writing specifying character and amount of claim, such claim shall be deemed to have been waived, and each carrier participating in the service performed or called for by this contract shall be discharged from liability: Provided, however, that if loss, damage or injury complained of was due to delay or damage caused or contributed to by the carrier, or its employees, while being loaded or unloaded, or if damaged in transit by carelessness or neglect of the carrier, or its employees, then no notice of claim or filing of claim shall be required as a condition precedent to recovery."

[1] Respondent's action according to the allegations of his complaint was based upon the negligence and carelessness of the carrier in delaying the shipment, and the con-

dition of its stockyards and therefore respondent's action fell within the terms of the proviso, and no notice was necessary as a condition precedent to the bringing of his action. (*Hailey v. Oregon Short Line R. Co.*, 253 Fed. 569; *Barrett v. Van Pelt*, 268 U. S. 85, 45 Sup. Ct. 437, 69 L. ed. 857.) This also disposes of instruction No. 20, which was in accordance with the proviso.

[2] Appellant contends that the carrier undertook to deliver the freight only within a reasonable time, and that the court erred in permitting plaintiff to testify with regard to the time consumed in making other shipments over the same route. While evidence of the time taken for other shipments between the same points as the ones involved in the suit is competent proof as to the usual and reasonable time (*National Elevator Co. v. Great Northern Ry. Co.*, 141 Minn. 407, 170 N. W. 515; *St. Louis I. M. & S. Ry. Co. v. Gunter*, 44 Tex. Civ. App. 480, 99 S. W. 152; *Stevens v. Northern Cent. Ry. Co.*, 129 Md. 215, 98 Atl. 551; *A. F. Young & Co. v. Grand Rapids & I. R. Co.*, 201 Mich. 39, 167 N. W. 11; 10 C. J. 303), a witness may not ordinarily state what would be a reasonable time for transporting goods in an action where damages are sought to be recovered for an unreasonable delay. (10 C. J. 303.)

[3, 4] Complaint is also made that the court permitted plaintiff's witness to testify that the agent of the railroad company promised to pay for the feed for the sheep while the sheep were in the stockyards at Pocatello. Appellant argues that this testimony tended to show a change of the conditions of the bill of lading and in effect amounted to a promise to give a rebate contrary to law. It was not shown that the employees of the railroad company making such statements had authority to make such a new contract or change the old one in this particular, nor that they had authority to make a binding admission as bearing upon the failure to transport within a reasonable time. Such testimony was therefore improperly admitted.

If the appellant was negligent and responsible for the delay it would be liable for the extra feed required. (*Groot v. Oregon Short Line R. Co.*, 34 Utah, 152, 96 Pac. 1019;

5 Elliott on Railroads, 722; *St. Louis & S. F. R. Co. v. Cox, Peery & Murray,* 40 Okl. 258, 138 Pac. 144.) Instructions Nos. 21, 22 and 25 were therefore as to this phase of the matter not incorrect. Instruction No. 22 should, however, in connection with the duty required of the carrier to provide stockyards, have contained therein the word "reasonably." (*Lane v. Oregon Short Line R. R. Co.,* 34 Ida. 37, 198 Pac. 671.)

Aside from the question of delay being reasonable or unreasonable, as bearing upon the liability of the railroad company to pay for the hay during the time that the sheep were in the stockyards at Pocatello, it was liable in line with instruction No. 22 for any loss or injury suffered by respondent because of the bad condition of the stockyards. The verdict, however, was general and it is impossible to determine what portion thereof the jury found as damages due to the injury to the sheep, and what part was for hay.

As indicated above the other errors complained of bear upon the instructions given and refused concerning the strike. Instruction No. 15 was as follows:

"You are instructed that if you find from the evidence that there was an unreasonable delay in the transportation of plaintiff's sheep from Adrian, Oregon, to Idaho Falls, Idaho, and that by reason thereof the plaintiff suffered a loss, the defendant cannot excuse such delay by the fact that a group of its employees, to-wit, about one hundred (100) switchmen operating in the railroad yards at Pocatello, Idaho, went out on a strike after the arrival of such sheep at Pocatello, and you are further instructed that if the unreasonable delay in the said shipment was occasioned by such a strike the employees of the said defendant were guilty of negligence, for which negligence, the defendant was liable to the plaintiff, if the plaintiff suffered a loss thereby."

[5] While a carrier is an absolute insurer of the final and ultimate delivery of freight consigned to it for transportation (10 C. J. 107; 4 R. C. L. 697, sec. 175), [6] it is, in the absence of a special contract, providing for the delivery at or within a certain time, only responsible for de-

livery within a reasonable time. (10 C. J. 283; 4 R. C. L. 737, sec. 206.) The bill of lading herein provided as follows: "The carrier does not undertake to transport said animals by any particular train, or within any particular time, or in time for any particular market."

Under similar provisions it has been held that delivery .within a reasonable time was a compliance with·the contract. (10 C. J. 286; *Sterling v. St. Louis, I. M. & S. Ry. Co.,* 38 Tex. Civ. App. 451, 86 S. W. 655; *John Vittucci Co. v. Canadian Pac. Ry. Co.,* 102 Wash. 686, 174 Pac. 981; *Marshall v. McNear,* 121 Fed. 428; note to *Stiles v. Louisville & Nashville R. R. Co.,* 129 Ky. 175, 130 Am. St. 429, at 456, 110 S. W. 820; *Ecton v. Chicago, B. & Q. Ry. Co.,* 125 Mo. App. 223, 102 S. W. 575.) **[7]** What is a reasonable time depends upon the facts and circumstances of each˙individual shipment. (10 C. J. 286; 4 R. C. L. 738, sec. 207.)

**[8]** The court's instruction No. 14 that a strike was not an act of God or an act of a public enemy was correct, but in an action for damages due to delay an excuse for such delay may be shown other than acts of God or acts of the public enemy because the carrier must deliver only within a reasonable time. (10 C. J. 290.)

"While, save for the well recognized exceptions, a carrier is an insurer for the final safety and delivery of goods committed to its charge for transportation, in respect to the time of delivery it stands on the same ground with other bailees, and is responsible only for the exertion of due diligence. Consequently, if by accident or misfortune, not amounting to an inevitable casualty or the act of God, the transportation of goods is retarded, the carrier will not be responsible for such delay, if it has used due care and reasonable diligence, and the goods are finally safely delivered." (4 R. C. L., p. 741, sec. 210.)

While some cases have held that a strike was no excuse or justification for delay, the authorities so holding have in practically every instance contained the words similar if not identical with "where there was a failure on the part

of the carrier to promptly supply the places of the strikers.''
(4 R. C. L., p. 744, sec. 212.)

[9]    If the strikers continue to be servants of the carrier
the carrier is responsible for their negligence in refusing to
work, under the doctrine of *respondeat superior*, but since
the carrier is under the obligation of delivering only within
a reasonable time, if the employees refuse to work, the ques-
tion of whether the carrier exercised due diligence in en-
deavoring to continue the operation of its transportation
system so as to deliver within the terms of the contract,
namely, within a reasonable time is a question of fact.    (10
C. J. 305; *Sims & Co. v. Midland Ry. Co.*, 1 K. B. [1913]
103.)    If the strikers cease to be the servants of the carrier
the carrier of course is no longer responsible for their acts;
it is, however, obligated to the shipper to deliver the goods
within a reasonable time, and the question would be what
diligence did the carrier exercise in seeking to secure new
employees to take the place of those who had quit.

The question of whether it was a passive strike or a strike
of violence would have a bearing upon the diligence to
be exercised by the carrier but would make no difference
in principle.    (*The Richland Queen*, 254 Fed. 668, 166
C. C. A. 166.)    In other words, it could not be said as a
matter of law that a passive strike was no excuse while a
strike of violence would be an excuse; if there were physical
interruptions in the transportation of the freight due to
wrecks or any other physical causes not amounting to an
act of God or superinduced by acts of the public enemy
whereby delay ensued, it would be a question of fact
as to whether there was negligence, hence an unreasonable
delay, or whether there was no negligence and hence not an
unreasonable delay.    Practically all the authorities hold that
a strike of violence is a valid excuse for a delayed shipment,
and their justification in so holding must be that the dili-
gence shown to have been exercised by the carrier in the
face of such violence, was reasonable; if then in a passive
strike the carrier, without fault on its part, and after the
exercise of every reasonable effort to secure others to take
the place of the strikers, is unable to secure men, there is

no difference in principle. In a violent strike the violence, being beyond the control of the carrier, and preventing the operation of its system, is an excuse; in a passive strike if conditions other than violence produce the same result, why should not the carrier be likewise excused? The carrier is as much responsible for the carefulness of its employees in the discharge of their duties as it is for the continuance by them of the discharge of their duties, and so far as delay is concerned is no more responsible; therefore, if the carrier, where there has been a physical interruption due to the breakdown in machinery which might be charged to the negligence of the employees, may have such question as a question of fact passed upon by the jury, it would seem that it would have an equal right to have the question of its own diligence in attempting to secure other employees to take the place of those who had either refused to work or had absolutely quit the service passed on by the jury.

"As has been already stated, a failure on the part of a carrier ultimately to deliver in safety goods intrusted to it for carriage, owing to the violence or depredations of a mob, is not excused, since such acts do not come within the legal comprehension of the terms 'act of God' or 'the public enemy.' This circumstance and the application of the maxim, *respondeat superior,* have probably induced some courts in a few of the earlier decisions to hold that a carrier is liable for the inevitable delay and consequent damage to goods in transit caused by strikes of employees, armed mobs, or rioters. On the other hand, later authorities, recognizing that in the absence of special contract there is no absolute duty resting on a railroad carrier to deliver goods intrusted to it within what, under ordinary circumstances, would be a reasonable time, maintain the now generally approved doctrine that not only storms and floods and other natural causes may excuse delay, but the conduct of men may also do so." (4 R. C. L., p. 743, sec. 212.)

While the instruction in the case at bar perhaps sought to so instruct the jury, it seems clear that this instruction removed from the jury's consideration of what, if any, diligence the railroad company had exercised in endeavor-

ing to ameliorate the effect of the strike upon the forwarding of the sheep in question. It is further apparent that such instruction can be given no other construction because of instruction No. 14 stating that a strike was not an act of God or an act of the public enemy and instruction No. 17, which advised the jury that the delay was unreasonable unless caused by an act of God, public enemy, authority of law, or inherent tendency of the sheep themselves. The defendant was liable if there was a strike, and due diligence had not been exercised by the carrier to overcome the strike; but if it had exercised such due diligence the delay would not have been unreasonable. In other words, the court improperly said that if the unreasonable delay was occasioned by the strike the defendant was liable. Delay may be excused and therefore not amount to an unreasonable delay, because of acts which do not reach to the dignity of or fall within any of the classes enumerated in instruction No. 17.

Though there is some apparent conflict in the authorities upon this proposition, we believe that upon a careful analysis they can all be distinguished or reconciled in accordance with the above theory.

In *Sherman v. Pennsylvania R. Co.*, 21 Fed. Cas. 1279, No. 12,769, an armed mob in sympathy with the strikers was found by the court to be the real cause of the damage.

In *Central R. & Banking Co. v. Georgia Fruit & V. Exchange*, 91 Ga. 389, 17 S. E. 904, the court held that the determination of the effect of the inability to promptly secure new men to take the place of strikers was not necessary to a decision of the case, holding, however, that the carrier had not exercised due diligence.

*Haas v. Kansas City, Ft. S. & G. R. Co.*, 81 Ga. 792, 7 S. E. 629, held that a strike of violence was an excuse.

The principle in *Indianapolis & St. Louis R. R. Co. v. Juntgen*, 10 Ill. App. 295, is in accord with the theory announced herein:

" 'In this respect the common carrier stands on the same ground as other bailees, and may excuse delay in the delivery of goods, by accident or misfortune, although not inevitable,

or produced by the act of God. All that can be required of him in such an emergency is that he shall exercise due care and diligence to guard against delay, and that, if it occur without his fault or negligence, he shall omit no reasonable effort to secure the safety of the goods.' " (Hutchinson on Carriers, sec. 330.)

*Blackstock v. New York & Erie R. R. Co.,* 20 N. Y. 48, 75 Am. Dec. 372, recognized that the carrier is not under the same absolute obligation to deliver goods in the usual time and to deliver them in safety. While the court therein held that the strike of the carrier's engineers was no excuse, it is apparent that it so decided on a question of fact.

The authorities relied upon in the Blackstock case, *supra,* are upon the question of *respondeat superior* and were not strike cases.

In *Jonesboro, L. C. & E. R. Co. v. Maddy,* 157 Ark. 484, 248 S. W. 911, the question of the liability of the carrier because of a strike of its employees was held to be a question of fact for the jury, and if there are other expressions which would seem to hold that a strike is no excuse the authorities cited to such holding in the main do not sustain such a broad rule.

In *Railway Co. v. Nevill,* 60 Ark. 375, 46 Am. St. 208, 30 S. W. 425, 28 L. R. A. 80, there was a total failure to deliver the goods, which of course is no authority on the question of delay only.

*American Railway Express Co. v. Peninsula Produce Exchange,* 142 Md. 422, 121 Atl. 240, held that the court properly refused to instruct that a strike was an absolute excuse and that therefore the shipper could not recover where there had been ample time to place the car on a delivery track before an accident caused a wreck which caused the delay, quoting with approval 4 R. C. L. 744, which holds that the carrier is liable for delay consequent to a strike, where there is a failure to supply promptly the strikers; the question of the promptness of the carrier is therefore one of fact for the jury.

*American Fruit Distributors of California v. Hines,* 55 Cal. App. 377, 203 Pac. 821, holds that irrespective of a provision in the bill of lading "that the carrier should not be liable for loss occurring from strikes," it is liable for delay on account of a strike unless it uses all reasonable efforts to procure men to run the trains and avoid delay and consequent damage.

In *Warner v. St. Louis-San Francisco Ry. Co.* (Mo. App.), 274 S. W. 90, there was no strike clause but the principle announced is in accord with *American Fruit Dist. of California v. Hines, supra.*

An able discussion and review of many authorities bearing upon the principle involved herein is found in *Fiske Warren v. Portland Terminal Co.,* 121 Me. 157, 26 A. L. R. 304, 116 Atl. 411, concluding that:

"A wharfinger who is also a common carrier is not liable to one who has tendered a cargo for unloading from a vessel and transportation, for the amount paid by him for demurrage because of the delay of the wharfinger in unloading the vessel, due to a peaceable strike of his employees, if he exercised reasonable diligence in employing suitable employees and averting strikes."

*Panhandle & S. R. Ry. Co. v. Thompson* (Tex. Civ. App.), 235 S. W. 913, holds that where the employees suddenly abandon a carrier's service, and, while offering no violence and causing no forcible obstruction to its business, simply refuse to work or further discharge their duties, for any delay in a shipment of cattle consequent thereon the carrier is liable if it fails to use reasonable diligence in supplying the places of the striking employees, and that the question of whether the carrier has used reasonable diligence is a question of fact for the jury.

The portion of instruction No. 19 which stated that the run could be made within 28 hours or less was an invasion of the province of the jury, improperly limited the defense available to defendant and was erroneous.

42 Idaho—14

The judgment is ordered reversed and the cause remanded with instructions to the lower court to grant a new trial. Costs are awarded to appellant.

Wm. E. Lee and Taylor, JJ., concur.

William A. Lee, C. J., and Budge, J., dissent.