## MURPHY HARDWARE COMPANY v. SOUTHERN RAILWAY COMPANY.

(Filed 21 May, 1909.)

1. **Carriers of Freight — Penalty Statutes — Refusal to Receive — Strikes—Unavoidable Conditions—Defense.**

   In an action to recover the penalty for the failure of the carrier to accept a drove of cattle for shipment (Revisal, sec. 2631) it is a valid defense for the carrier to show that the shipments were refused by reason of strikes and other conditions over which it had no control, rendering it impossible for it to make the shipments, if accepted.

2. **Same—Stock.**

   The penalty against a carrier for refusing to receive (Revisal, sec. 2631) and that for failure to transport within a reasonable time (Revisal, sec. 2632) must be construed together to ascertain the entire burden placed on the carrier; and it is a valid defense, in an action for the penalty for refusing to receive shipments of cattle, for the carrier to show that, owing to strikes and other conditions over which it had no control, it could not have transported them, if received; and the carrier, under such conditions, is not compelled to keep and feed a shipment of cattle for an indefinite time.

3. **Carriers of Freight—Penalty Statutes—Legal Excuse—Defense.**

   A carrier may show, in defense to an action brought for the penalty under the Revisal, sec. 2631, for refusing to accept a shipment tendered, any legal defense or excuse it may have against the shipper for failure to discharge its common-law duty.

ACTION against a carrier to recover penalties, tried by *Guion, J.,* at Spring Term, 1908, of CHEROKEE.

His Honor rendered judgment against the defendant, and the defendant appealed to the Supreme Court.

The facts are stated in the opinion of the Court.

*E. B. Norvell* for plaintiff.
*Moore & Rollins, W. B. Rodman* and *Dillard & Bell* for defendant.

BROWN, J.    The facts as set out in the record present this case:
On 4 February, 1907, the plaintiff instituted eight separate actions against the defendant to recover the sum of $2,000

penalties in each action (total, $16,000), under section 2631 of
Revisal of North Carolina, for failure of defendant to receive a
drove of 80 head of cattle, tendered to the defendant at Murphy,
N. C., for shipment to Richmond, Va. The eight actions came
on for hearing at the Spring Term, 1908, of the Superior Court
of Cherokee County, and for convenience and by consent were
consolidated by his Honor, *O. H. Guion, Judge.* Upon the ad-
missions contained in the record his Honor signed judgment in
the consolidated case in favor of the plaintiff, and against the
defendant, for $200, it being one penalty of $50 for each day
for the four days the defendant refused to receive the entire lot
of cattle for shipment. The defendant demanded a trial by
jury upon the issues raised by the pleadings and excepted to the
refusal of the court to submit said issues, and also to the action
of the court in signing judgment for $200; and further moved
to dismiss said action for the reason that upon the face of said
complaint it appeared that the court was without jurisdiction to
try and determine said cause, for that the same was an inter-
ference with interstate commerce, and for that the statute pro-
viding such penalty upon interstate shipments was contrary to
the Constitution of the United States. The court rendered the
judgment in the record, from which the defendant appealed.

The statute which imposes the penalty sued for is section 2631
of the Revisal of 1905, and reads as follows: "Agents or other
officers of railroads and other transportation companies whose
duty it is to receive freights shall receive all articles of the
nature and kind received by such company for transportation
whenever tendered at a regular depot, station, wharf or boat
landing, and every loaded car tendered at a side track, or any
warehouse connected with the railroad by a siding, and shall
forward the same by the route selected by the person tendering
the freight under existing laws; and the transportation com-
pany represented by any person refusing to receive such freight
shall forfeit and pay to the party aggrieved the sum of fifty
dollars for each day said company refuses to receive said ship-
ment of freight, and all damages actually sustained by reason
of the refusal to receive freight. If such loaded car be tendered
at any siding or warehouse at which there is no agent, notice

shall be given to an agent at nearest regular station at which there is an agent that such car is loaded and ready for shipment."

In its answer the defendant avers that it was prevented from furnishing cattle cars to the plaintiff on account of a strike of the machinists on its road, numbering some two or three thousand, which strike it could not control, in consequence of which a large per cent of defendant's motive power got out of order and could not be used.

The decision of the court is put upon the ground that the action is brought to recover a penalty for not receiving the cattle and not for a failure to transport, and that therefore the defense pleaded cannot avail the defendant, even if true.

We are advertent to the general rule that the carrier must at all times be in proper condition both to receive from the shipper and to deliver to the consignee. *Stock Yard v. Keith,* 139 U. S., 133. But we think that general rules must sometimes give way to particular cases, and that if the defense set up be true, the defendant could not be compelled to receive cattle and feed them indefinitely when it was impossible to foresee when they could be shipped. Otherwise, at a cattle-shipping point like Murphy, the carrier might, in cases of a breakdown or burning of its bridges, or a long-continued strike of its employees, find itself, in a short while, with hundreds of cattle on hand which it must feed and care for. No reasonable foresight and judgment can provide against such contingencies.

But that is not the only reason why this defense should be allowed. The penalty statutes must be taken together, so as to ascertain the entire burden imposed on the carrier. In case the defendant had received these cattle in its then unavoidably crippled condition, it would have incurred very shortly thereafter another penalty for delay in shipping, for section 2632, immediately following, imposes a penalty for failure to transport within a reasonable time and fixes the limit of time within which to start the shipment from the initial point at two days. So it follows that if defendant had received the cattle and penned them, its inability to ship them within two days would

150—45

have brought upon it another and continuing penalty for thirty days. *Bagg v. Railroad,* 109 N. C., 279. As between these two statutes and in the crippled condition it could not provide against, the defendant would be placed in a helpless condition. It seems unreasonable to require a carrier to continue to receive such a commodity as live stock, especially when conditions it cannot control or avoid will prevent their shipment within the time required by law. To hold that these penalty statutes admit of no defense whatever would render them amenable to the forcible criticism of the Supreme Court of the United States in *Railroad v. Mayes,* 201 U. S., 329 : "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other calamities, transcends the police power of the State and amounts to a burden upon interstate commerce. It makes no exception in cases of a sudden congestion of traffic, an actual inability to. furnish cars, by reason of their temporary and unavoidable detention in other States or in other places within the same State. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads involving a detention of traffic, the breaking of bridges, accidental fires, washouts, or other unavoidable consequences of heavy weather."

For these reasons we think that a statute which imposed such penalties and which permitted no defense and no excuse, however just, practically takes the property of the carrier without due process of law, because, while the carrier may be brought into court, it is denied the right to make defense or excuse, however reasonable. But we do not so construe the law.

We have considered this question at length in the case of *Garrison v. Railroad, ante,* 575, in a well-considered opinion by *Mr. Justice Connor,* and have held that these penalty statutes

McCOLMAN v. RAILROAD.

are enacted in aid of the common law and to compel a discharge of those duties only which the common law itself imposes upon the carrier, and that where the carrier has a legal defense or excuse for failure to discharge such duty it may be pleaded in an action to recover the penalty.

Upon the principles laid down in that opinion we think his Honor erred in holding that the statute admitted of no defense.

In this view of the case we deem it unnecessary now to consider the other question of interstate commerce presented on the record.

New Trial.