## KERRIGAN IRON WORKS, Inc. v. COOK TRUCK LINES, Inc., et al.—296 S. W. (2d) 379.*

Middle Section. June 29, 1956.

Petition for Certiorari denied by Supreme Court December 7, 1956.

* Reversed without opinion, 353 U.S. 968, 1 Led., 2d. 1133.

470

Bass, Berry & Sims, Nashville, for Kerrigan Iron Works, Inc.

King & Fuston, Chattanooga, for Cook Truck Lines, Inc., et al.

FELTS, J. This is a suit by a shipper for an injunction to require common carriers to continue rendering their customary service to complainant, and to restrain a labor union and its officers and agents from interfering with any carrier or its employees in rendering such service.

The original bill was filed November 26, 1952, in the Chancery Court of Davidson County at Nashville, by complainant Kerrigan Iron Works, Inc., against Cook Truck Lines, Inc.; Hoover Motor Express Company, Inc.; Teamsters, Chauffeurs, Helpers and Taxicab Drivers, Local Union No. 327 (hereinafter referred to as Local 327); and its officers and agents, sued both as individuals and as representatives of Local 327, an unincorporated association.

Defendants Cook and Hoover were Tennessee corporations and common carriers engaged in transporting freight for hire by motor truck on the highways in this and in other states, under certificates of convenience and necessity issued by the Interstate Commerce Commission and by the Tennessee Public Service Commission. Defendant Local 327 was the union and the collective-bargaining representative of the truck driver and freight-handling employees of Cook, Hoover, and other motor truck carriers with their principal place of business in Nashville.

Complainant had two plants in Nashville where it manufactured iron and steel products. It shipped large amounts of raw materials to these plants and large quantities of its manufactured products from them. Such shipments were intra- and interstate and were customarily carried by Cook, Hoover, and other like carriers, which maintained pickup and delivery service at these plants. Complainant was largely dependent on such service for continuance of its business.

None of complainant's employees were members of Local 327. Some of them were members of another and different union, the International Association of Bridge,

Structural, and Ornamental Iron Workers (hereinafter called Iron Workers), and were covered by a collective bargaining contract between complainant and Iron Workers. In March 1952, a dispute arose, Iron Workers called a strike, and placed pickets at complainant's plants. Some weeks later most of the employees came back to work, and complainant has been operating the plants ever since, though Iron Workers has continued the picketing, which has been peaceful.

When Iron Workers put the pickets at complainant's plants, defendants Cook and Hoover quit rendering carrier service to complainant. They refused to make pickups or deliveries at the plants and refused to permit complainant's employees to come to their freight yards for freight which had been consigned to complainant and accepted by them for delivery to it. They stated that the reason for their refusal was that their employees, members of Local 327, would not cross Iron Workers' picket line or handle freight consigned to or from complainant's plants.

The bill averred that this reason was wholly insufficient; that under the law of Tennessee defendant common carriers and their employees were bound to render service to the public without preference or discrimination; and that their conduct in refusing to render their customary service to complainant was in violation of the common law and statutes of Tennessee, T. C. A. secs. 64-422, 65-512, 65-514, 65-1523, 65-1524.

It was further charged that the officers, agents, and members of Local 327 had conspired and combined among themselves and with defendants Cook and Hoover to accomplish an unlawful purpose, to wit: refusal to perform

or permit performance of the legal duty upon these common carriers to render their customary service to complainant; and that this combination was in violation of the Tennessee Anti-trust law, T. C. A. sec. 69-101.

The bill further charged that defendant carriers had accepted from other common carriers freight consigned to complainant and had thereby entered into contracts to complete the carriage and deliver the freight to complainant; and that the conduct of Local 327 and its members, in causing defendant carriers to breach such contracts, violated the statute of Tennessee declaring it unlawful for any person, by any means, to procure a breach of any lawful contract by any party thereto, T. C. A. sec. 47-1706.

The bill also alleged that by reason of defendants' unlawful conduct, complainant would suffer irreparable damages, and that there was no adequate remedy at law. The prayer was for a temporary injunction restraining defendant carriers from failing or refusing to provide their customary service to complainant, and restraining Local 327 and its officers and agents from interfering with such service; and that, on final hearing, such injunction be made permanent.

Defendants Cook and Hoover filed answers, each admitting its failure to render the service but averring that this was because its employees refused to cross the picket line or to handle freight for complainant; and that each of them had a contract with Local 327 which permitted its employees to refuse to cross another union's picket line or to handle "unfair goods". Hoover also filed a cross-bill asking that this provision of the contract be declared illegal and void.

474

On December 17, 1952, defendant Local 327 and its officers and agents filed a plea to the jurisdiction of the Chancery Court. They alleged that the subject matter of this suit was governed by sections 7 and 8(b) (4) (A) and (D) of the National Labor Relations Act, as amended, 29 U. S. C. A. secs. 157, 158(b) (4) (A, D.); and that the National Labor Relations Board had exclusive jurisdiction and the state court had no jurisdiction of the matter.

On January 12, 1953, after a hearing, the Chancellor entered a decree overruling this plea and granting a temporary injunction, as prayed, enjoining Cook and Hoover "from failing or refusing, while exercising the duties and privileges of a common carrier, to provide the customary carrier service to complainant * * *" and enjoining Local 327 and its officers and agents from interfering with any carrier or its employees in rendering such service.

Local 327 and its officers and agents filed an answer averring that under the contract with the carriers their employees had a right to refuse to cross a union picket line or to handle "unfair goods"; and that the relief sought by the bill would conflict with sections 7, 8, and 13 of the National Labor Relations Act, as amended, and would deprive the union and its members of their rights under the 13th and 14th Amendments to the Constitution of the United States.

By supplemental bill, 20 more motor carriers, with the business agent of Local 327 with each of them, were made defendants. Answers were filed by some and *pro confessos* entered against the others. Proof was taken by complainant and by cross-complainant Hoover. No proof was offered by Local 327 or its officers or agents.

Instead, they moved to dissolve the injunction and dismiss the suit on the ground that the court had no jurisdiction of the subject matter, and that exclusive jurisdiction was in the National Labor Relations Board.

On June 28, 1955, the cause was finally heard before the Chancellor on the entire record, including the motion to dismiss for want of jurisdiction. He overruled the motion and entered a decree finding the facts as alleged in the bill, making the temporary injunction permanent, and continuing it in force pending an appeal.

Local 327 and its officers and agents appealed and insist that the Chancery Court had no jurisdiction of the subject matter of the suit; that the carriers' employees were exempted by their contract from any duty to render service at the picketed plants; and that the injunction violates appellants' rights under the 13th and 14th Amendments to the Constitution of the United States.

The subject matter of the suit is the controversy between the shipper and the carriers. It does not involve any employer-employee relation or any labor dispute. It does not involve the dispute between complainant and its employees or seek to stop their picketing. The only conduct complained of is the conduct of the carriers in not rendering the service and the conduct of appellants in interfering to prevent such service.

That this conduct is unlawful cannot be denied. It violates the common law and the statutes of Tennessee, as averred in the bill and above set forth. Under the rule in equity and under our statute, T. C. A. sec. 65-1523, complainant shipper is entitled to an injunction to compel the carriers to render the service, and to restrain

476

appellants from interfering therewith. T. C. A. secs. 65-1523, 65-1524; Gibson's Suits in Chancery, 4th Ed., sec. 804; Hogan v. Nashville Interurban Railway Co., 131 Tenn. 244, 174 S. W. 118, L. R. A. 1915E, 788, Ann. Cas. 1916C, 1162; Memphis News Publishing Co. v. Southern Ry. Co., 110 Tenn. 684, 75 S. W. 941, 63 L. R. A. 150.

■ Such is the general rule of equity in state and federal courts. A shipper is entitled to an injunction to require a common carrier to perform its duty of carriage; and, according to equity practice, the injunction runs against the carriers' "agents and employees", as of course and without their being made parties to the suit. 2 Daniell's Chancery Pleading and Practice, 6th Am. Ed., 1673; Gibson's Suits in Chancery, 3d Ed., sec. 834; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., C. C., 54 F. 730, 742, 19 L. R. A. 387, 393; Montgomery Ward & Co. v. Northern Pacific Terminal Co., D. C. 1953, 128 F. Supp. 475-519, same, D. C., 128 F. Supp. 520-527; Burlington Transportation Co. v. Hathaway, 234 Iowa 135, 12 N. W. 2d. 167, 149 A. L. R. 1238.

"An injunction not only binds parties defendant but also those identified with them in interest or subject to their control, and may issue against and be binding on the agents and employees of a party without the agents and representatives being made parties to the suit. In re Lennon, 166 U. S. 548, 17 S. Ct. 658, 51 L. Ed. 1110; Chase National Bank v. [City of] Norwalk, 291 U. S. 431, 54 S. Ct. 475, 78 L. Ed. 894; and Rule 65(d), Federal Rules of Civil Procedure, 28 U. S. C. A." Baltimore & O. R. Co. v. Chicago River & Indiana R. Co., 7 Cir., 170 F. 2d

654, 659, certiorari denied Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 336 U. S. 944, 69 S. Ct. 811, 93 L. Ed. 1101.

■ So long as a person remains an employee of a carrier he is identified in interest with the carrier and is subject to the same duty which the carrier owes to the public and to the shipper. "The transportation employee, rail or motor, is charged with duties to the industry, to the shipper and to the public". Judge Fee, Montgomery Ward & Co. v. Northern Pacific Terminal Co., supra, 128 F. Supp. 500; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., supra, 54 F. 743, 19 L. R. A. 394.

■ This general rule that state courts may grant injunctive relief against carriers applies not only to intra- but also to interstate carriers. As to the former, this equity jurisdiction of Chancery Courts in this state was not superseded by our statutes relating to the Tennessee Public Service Commission, but was supplemented by one of these provisions, T. C. A. sec. 65-1523. Nor was such jurisdiction as to interstate commerce superseded by the Interstate Commerce Act and its amendments. 49 U. S. C. A. sec. 22; Pennsylvania Railroad Co. v. Sonman Shaft Coal Co., 242 U. S. 120, 124, 37 S. Ct. 46, 61 L. Ed. 188; Montgomery Ward & Co. v. Northern Pacific Terminal Co., D. C., 128 F. Supp. 475, 494-495.

Appellants, however, deny that such jurisdiction exists in this case. As we understand, they do not deny that their conduct, in preventing the carriers' employees from rendering the service, violated the law of this state. They undertake to justify such conduct upon the claim that

478

these employees, under their contract [1] with the carriers, had the right to refuse to cross another union's picket line or to handle "unfair goods", and that their conduct has been, by the federal Acts, 29 U. S. C. A. sec. 141 et seq., withdrawn from state power and placed in the exclusive jurisdiction of the National Labor Relations Board.

Their argument is that the conduct here enjoined was either a "concerted activity" protected by section 7 [2] and section 13 [3] of the Wagner and the Taft-Hartley Acts, 29 U. S .C. A. secs. 157, 163, or a union "unfair labor practice" under Section 8 [4] (b)(4) (A, D) of that Act, 29 U. S. C. A. sec. 158(b) (4) (A, D), of which the exclusive jurisdiction was in the National Labor Relations Board; and that in either event, the state court had no jurisdiction to enjoin such conduct.

---

[1] The contract provision relied on is as follows: "It shall not be a violation of this Agreement and it shall not be cause for discharge if any employee or employees refuse to go through the picket line of a Union or refuse to handle unfair goods * * * (defining the term "unfair goods")***." Art. IX, p. 14, Ex. A to Pritchard, tr. p. 143.

[2] Section 7 is as follows: "Employees shall have the right to self-organization, to form, join, or assist labor organizations; to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *."

[3] Section 13 is as follows: "Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."

[4] This part of section 8 is as follows: "(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or other-

Thus by section 7 employees have the right to join or assist labor unions, and to engage in other "concerted activities" for collective bargaining or other mutual aid or protection; while section 13 provides that nothing in the Act, except as therein provided, shall be construed to interfere with "the right to strike"; and section 8 (b) outlaws and defines certain union conduct as "unfair labor practices".

These provisions are cast in most general terms, and the Supreme Court warns that this law "leaves much to the states, though Congress has refrained from telling us how much", Garner v. Teamsters, C. & H. Local Union, 346 U. S. 485, 74 S. Ct. 161, 164, 98 L. Ed. 228, 238; and that " 'the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds' * * * What is within exclusive federal authority may first

---

wise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * * (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: **Provided,** That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter".

have to be determined by this Court to be so''. Amalgamated C. W. of A. v. Richman Bros., 348 U. S. 511, 516, 75 S. Ct. 452, 455, 99 L. Ed. 600, 608.

Nevertheless, we think a state court, confronted with this problem, may safely deduce from the Supreme Court decisions these three generalizations, as useful aids in the consideration of the question:

1. When a suit upon a matter of labor relation is brought in a state court and the court's jurisdiction is denied, the court must determine the question for itself. It is true there is language in some of the cases to the effect that a state court has no authority to determine a question of unfair labor practice under the federal Acts and that it must be determined by the National Labor Relations Board. But it is of the essence of judicial duty that the court must decide the case, including the question of its own jurisdiction. It cannot stop and refer the question to the Board; nor will a federal court interfere to forestall the state court's determination. Amalgamated C. & W. of A. v. Richman Bros., supra. There, Mr. Justice Frankfurter, speaking for the Court said:

"We cannot assume that this confidence [in state courts] has been misplaced. Neither the course of this case, nor the history of state court actions since the decision in Garner v. Teamsters, C. & H. Local Union, 346 U. S. 485, 74 S. Ct. 161, 98 L. Ed. 228, demonstrate recalcitrance on the part of state courts to recognize the rather subtle line of demarcation between exclusive federal and allowable state juris-

diction over labor problems". 348 U. S. 518, 75 S. Ct. 452, 457, 99 L. Ed. 609.

2. Matters of local concern, such as labor relations, over which the several states have traditionally exercised jurisdiction, remain in state power unless and until they are pre-empted by Congress, by virtue of the Commerce, art. 1, sec. 8, cl. 3, and the Supremacy, art. 6, cl. 2, clauses of the federal Constitution; and in a given case the intent of Congress to exclude state power must be clearly manifested. International Union U. A. W. A. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U. S. 245, 253, 69 S. Ct. 516, 93 L. Ed. 651, 662; Allen-Bradley Local No. 1111, U. E. R. M. W. v. Wisconsin Employment Relations Board, 315 U. S. 740, 749, 750, 62 S. Ct. 820, 86 L. Ed. 1154, 1164; Kelly v. State of Washington ex rel. Foss Co., 302 U. S. 1, 9, 58 S. Ct. 87, 82 L. Ed. 3-10.

3. In order to exclude state power over a given type of conduct in labor relations, two things must concur: (1) Congress must clearly have manifested an intent to pre-empt such conduct and withdraw it from state control; and (2) it must have provided a federal remedy for injury caused by such conduct. In the absence of such remedy, such conduct will be subject to concurrent jurisdiction of both the state's and the federal authority. United Constr. Workers, etc. v. Laburnum Constr. Corp., 347 U. S. 656, 74 S. Ct. 833, 98 L. Ed. 1025; United Auto., A. & A., etc. v. Wisconsin Employment Relations Board, 351 U. S. 266, 76 S. Ct. 794, 100 L. Ed. 1162, and other cases hereinafter cited.

We come to the question whether the union conduct here is a "concerted activity" under sections 7 and 13 so as to be protected from state power. This case does not involve any employer-employee relation or any labor dispute between the parties. The only conduct involved is the refusal of the carriers and the employees to render the service and the only union claim is that of the right of its members to refuse to cross another union's picket line or to handle "unfair goods", or goods which have crossed or are destined to cross such picket lines.

This right of union members to refuse to cross another union's picket line is, of course, not as important as their right to refuse to cross their own picket line. In the latter case there is self-interest which justifies "concerted activities" which would otherwise be illegal. This right to refuse to cross another union's picket line has been a potent weapon in Labor's fight for the gains it has made, and no true friend of Labor wishes to see this weapon weakened.

But this right to refuse to cross another union's picket line is not one of the basic, vital interests of Labor, such as the right of workers to self-organization; their right to collective bargaining by representatives of their own choosing; their right to strike in support of their demand for higher wages and better hours and working conditions; and their right to engage in peaceful picketing to support a lawful strike.

Since the union conduct here does not involve the right to strike, it would seem that section 13 does not protect such conduct; and since it does not involve the right to

engage in peaceful picketing or any of the other vital rights of workers, it would seem not to be a "concerted activity" within the protection of section 7. At least, we have been able to find no Supreme Court decision holding that the right to refuse to cross another union's picket line is a "concerted activity" protected by section 7.

It appears that the right of union employees to refuse to cross another union's picket line is not a federally protected right but only a matter of contract and the employer and employee are free to contract as they wish about the matter. As we understand, it was so held in National Labor Relations Board v. Rockaway News Supply Co., 345 U. S. 71, 73 S. Ct. 519, 524, 97 L. Ed. 832, 31 A. L. R. (2d) 511. It was said:

"In the section by which the Labor Management Relations Act prescribes certain practices of labor organizations which shall be deemed unfair, there is a proviso that nothing therein 'shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this act * * *.' This clearly enables contracting parties to embody in their contract a provision against requiring an employee to cross a picket line if they so agree. And nothing in the Act prevents their agreeing upon contrary pro-

visions if they consider them appropriate to the particular kind of business involved."

But whatever may be the nature of this right not to cross another union's picket line, it is not beyond the reach of state power when it is employed for a purpose contrary to state law. Indeed, the more important right of picketing or to strike is not beyond state control when it is employed for purposes made unlawful by state law. International Union U. A. W. A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U. S. 245, 257, 69 S. Ct. 516, 93 L. Ed. 651, 664, and cases there cited; Local Union No. 10, etc. v. Graham, 345 U. S. 192, 73 S. Ct. 585, 97 L. Ed. 946; United Constr. Workers, etc. v. Laburnum Constr. Corp., supra; United Auto., A. & A., etc. v. Wisconsin Employment Relations Board, supra; Montgomery Ward & Co. v. Northern Pacific Term. Co., supra, 128 F. Supp. 506, 509.

Nor was the union conduct here, in our opinion, an "unfair labor practice" under section 8(b) of the federal Act so as to be beyond state power. It must be borne in mind that in this conduct this union was not on a strike, nor engaged in picketing, or in asserting any of the other basic rights of Labor. As stated, the conduct was only a refusal to cross another union's picket line which was being maintained to support a lawful strike by the other union.

As we have seen, subsection 8(b), making certain union conduct unlawful as "unfair labor practices", contains the proviso that "nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other

than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter''.

Thus this subsection (defining union "unfair labor practices") excepts from such practices the kind of conduct here involved. That is, this proviso plainly says that the refusal of any person to cross another union's picket line (maintained to support a lawful strike) shall not be unlawful or an "unfair labor practice" under section 8(b). Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co., 8 Cir., 1954, 215 F. 2d 126, 137.

To support appellants' claim that their conduct was unlawful and a "unfair labor practice" under section 8(b), they rely on these cases: Garner v. Teamsters, etc., Union, 346 U. S. 485, 74 S. Ct. 161, 98 L. Ed. 228; Weber v. Anheuser-Busch, 348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546; General Drivers, etc., Union v. American Tobacco Co., 348 U. S. 978, 75 S. Ct. 569, 99 L. Ed. 762; Local Union No. 25, etc. v. New York, New Haven & Hartford Railroad Co., 350 U. S. 155, 76 S. Ct. 227, 100 L. Ed. 166.

In the Garner case the conduct consisted of picketing which volated state law and was an "unfair labor practice" under section 8(b) of the federal Act. It was held that the state could not enjoin such conduct. The principle of that case was that there could not be two parallel remedies, one federal and the other state, for the same conduct.

But that principle has been materially modified in the later case of United Automobile, A. & A., etc. v. Wisconsin Employment Relations Board, 351 U. S. 266, 76 S. Ct.

794, 100 L. Ed. 1162, which held that a state could, under its own labor legislation, enjoin picketing which was carried on in violation of state law but which was also an "unfair labor practice" under section 8(b) of the federal Act. That is, there might be two similar remedies one federal and one state, for the same conduct under the circumstances.

In each of the other three cases above cited, the Weber case, the American Tobacco case, the Hartford Railroad case, the conduct consisted of union picketing, which the bill or complaint of the moving party expressly alleged was a violation both of state law and an "unfair labor practice" under section 8(b) of the federal Act. It was held that the state could not enjoin such conduct because it was controlled by the federal Act and was within the exclusive jurisdiction of the federal Board. In the Weber case, Mr. Justice Frankfurter said:

"But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance". 348 U. S. 481, 75 S. Ct. 488, 99 L. Ed. 558.

This language was later repeated and quoted in the Hartford Railroad case, 350 U. S. 155, 76 S. Ct. 227, 100 L. Ed. 166; and it seems to us to be a statement of the principle underlying these three decisions.

All those cases differ decisively from the case before us. In each of them the conduct was picketing which was either an "unfair labor practice" prohibited by section 8(b) or a "concerted activity" protected by section 7. But in the case before us the conduct was a mere refusal to cross another union's picket line (maintained to support a lawful strike) which conduct, by the proviso of section 8(b), is expressly declared not to be an "unfair labor practice".

So, we conclude that the conduct here enjoined was neither protected as a "concerted activity" under sections 7 and 13 nor prohibited as an "unfair labor practice" under section 8(b). Moreover, it does not appear that the federal Act affords any remedy for this conduct, or that the federal Board has any power to grant any relief to the shipper against these defaulting carriers and the unlawful conduct of appellants.

The decisions of the Supreme Court support the proposition that not only must it appear that Congress intended to withdraw the conduct in question from state power, but it must also appear that the federal Acts afford a remedy for injury caused by such conduct. The lack of a federal remedy has been emphasized as a reason for holding that the conduct in question was not withdrawn from state power.

In International Union, U. A. W. v. Wisconsin Employment Relations Board, supra, 336 U. S. 254, 69 S. Ct. 521, 93 L. Ed. 653, it was said:

"There is no existing or possible conflict or overlapping between the authority of the federal and state Boards, because the federal Board has no au-

thority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the state or it is entirely ungoverned.''

In the Garner case, supra, 346 U. S. 488, 74 S. Ct. 164, 98 L. Ed. 238, the Court said:

''This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union, U. A. W. v. Wisconsin Employment Relations Board, 336 U. S. 245, 254, 69 S. Ct. 516, 521, 93 L. Ed. 651, [663].''

In United Constr. Workers v. Laburnum Constr. Corp., supra, a state court was allowed to furnish its remedy by way of damages for tortious conduct which was a union ''unfair labor practice'' under section 8(b). That is, the fact that there was a federal remedy by which the federal Board could have stopped the conduct, did not prevent the state from affording its remedy by way of damages. In that case the Court said [347 U. S. 656, 74 S. Ct. 837]:

''In the Garner case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of

recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct.''

''To the extent that Congress prescribed preventive procedure against unfair labor practices, that case [Garner case] recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the Garner case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived.'' 347 U. S. 665, 74 S. Ct. 838, 98 L. Ed. 1031, 1032.

So, it seems clear that the conduct here enjoined was not pre-empted by Congress and withdrawn from state power but that, since there was no federal remedy for such conduct, the state could afford its own remedy and the Chancery Court had jurisdiction of the subject matter of this suit.

 We think there is no merit in appellants' claim that the carriers' employees were exempted by their contract from the duty to render service at the picketed plants. This contract bound only the parties thereto. It did not affect the rights of third persons. Such a contract cannot excuse defendant carriers and their em-

ployees from performing their public duty of carriage. Memphis News Publishing Co. v. Southern Ry. Co., supra.

Nor do we find any merit in appellants' claim that the injunction denied them their rights under the 13th Amendment. The injunction did not require appellants or any of the carriers' employees to work. Nor did it interfere with their right to strike. It merely restrained them, so long as they do work, from doing such work contrary to their public duty. Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., supra, 54 F. 743, 19 L. R. A. 396.

Nor is there any merit in their claim that such injunction violated their rights under the 14th Amendment. Giboney v. Empire Storage & Ice Co., 336 U. S. 490, 69 S. Ct. 684, 93 L. Ed. 834; Local Union No. 10, etc. v. Graham, supra.

All of the assignments of error are overruled and the decree of the Chancery Court is affirmed. The cause is remanded to that court for further proceedings not inconsistent with this opinion. The costs are adjudged against appellants and the surety on their appeal bond.

Hickerson and Shriver, JJ., concur.